# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6204 | **DATE** | 1/30/2003 |
| **CASE TITLE** | Engate Inc. vs. Esquire Deposition Services | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Corrected Memorandum Opinion and Order. The disputed claim terms are construed in accordance with the conclusions set forth in this Memorandum Opinion and Order. Plaintiff's motion for summary judgment of infringement (79-1), filed before the claim construction process began, is stricken without prejudice to refiling such a motion in light of the present ruling.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 0 3 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 115 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | 03 JAN 32 PM 5: 35 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ENGATE INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 01 C 6204 |
| ESQUIRE DEPOSITION SERVICES LLC, ATKINSON-BAKER, INC., and WORDWAVE, INC., | ) ) ) ) ) | DOCKETED FEB 0 3 2003 |
| Defendants. | ) | |

## CORRECTED MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Engate is the owner by assignment of the twelve patents involved in this case, all of which relate to real-time transcription systems used by court reporters and attorneys.[1] Engate has sued the defendants, three court reporting agencies, for infringement. Recognizing that the first step in any infringement case is claim construction, *see K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir. 1999), the parties submitted briefs and claim charts in support of their respective positions concerning how the various disputed claim elements should be construed; on January 3, 2003, they also presented oral argument on the issue. The purpose of this Memorandum Opinion and Order is to set forth the Court's construction of the disputed claim language.

---

[1] The patents at issue in this case are No. 5,369,704; No. 5,740,245; No. 5,884,256; No. 5,970,141; No. 5,940,800; No. 5,815,639; No. 5,926,787; No. 6,026,395; No. 5,878,186; No. 5,949,952; No. 6,023,675; and No. 6,282,510.

# DISCUSSION

The construction of the claims of a patent is a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995). In determining the meaning of the terms of the claims, the court considers "intrinsic" evidence, which consists of the language of the claims, the specification of the patent, and the prosecution history. *Id.* at 979; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Claims are construed objectively, without reference to the accused device, and only to the extent necessary to resolve the controversy between the parties. *Vivid Technologies, Inc. v. American Science*, 200 F.3d 795, 803 (Fed. Cir. 1999).

After filing their initial briefs on claim construction, the parties resolved many of their differences and filed supplemental charts highlighting the claim terms about which they still disagree. One additional dispute was resolved at the hearing on January 3 when the defendants notified the Court and Engate that they accepted Engate's construction of claim 15 of U.S. Patent No. 5,940,800. We address the remaining disputes below.

1. "Real Time"

The phrase "real time" appears throughout the patents, each of which addresses either a real-time reporting system or a specific feature or apparatus to make such a system easier to use. Engate asks us to construe this phrase to mean:

> as instantaneously as possible, limited by a reporter's ability to transcribe text, the CAT [computer-aided transcription] system's ability to convert the transcribed text into readable text, and the ability of the utilized software and hardware to display the converted text.

Engate's Claim Construction Brief, p. 3. The defendants argue that "real time" means that a written, video or audio record "is generated virtually simultaneously during the speaking of words during a testimonial proceeding so that the user can immediately use the record." Defendants' Claim Construction Brief, p. 4.

The Court was initially fuzzy as to whether the parties' constructions actually posed a conflict; after all, even in the context of real time reporting involving a court reporter, the words do not magically appear on a screen once spoken, but appear only after the court reporter has entered corresponding keystrokes and the transcription system has interpreted those keystrokes. At the January 3 hearing, the defendants explained that the conflict exists because of the "utilized software and hardware" language in Engate's definition. The defendants have no quarrel with the limitations concerning human (court reporter) capability and CAT system capability allowed under Engate's construction. They argue, however, that the way Engate has worded the limitation regarding software and hardware, it is really no limitation at all, and that the claim could encompass, for example, hardware consisting of "a can and a string," or the situation where a party takes a disk from the CAT system back to his office and downloads the disk to his hard drive – an event which could take place hours or days after the signals were originally transcribed. Under anyone's definition, neither of these scenarios produces a "real time" result. Thus, although these situations are unlikely – especially because the parties using the patented inventions will in all probability be more technologically sophisticated than that – we agree that Engate's definition is insufficient to capture the spirit of the technology. Accordingly, we construe the phrase "real time" to mean: as instantaneously as possible, limited by the ability of the reporter to transcribe text, the ability of the CAT system to convert the

transcribed text into readable text, and the ability of the software/hardware that is directly connected to the transcription means to display the converted text.

2. The '704 Patent

The '704 patent – the patent from which all of the other patents-in-suit stem – is entitled "down-line transcription system for manipulating real-time testimony"; it was issued November 29, 1994 and discloses "[a] transcription network having linked computer terminals for a court reporter and for examining, defending and associate attorneys . . . ." U.S. Patent No. 5,369,704, abstract. The patented invention "relates to a transcription system used by court reporters; and more particularly, it relates to a method and apparatus incorporating an automatic transcription system for providing real-time use and manipulation of transcribed testimony by attorneys, judges, court reporters, witnesses and clients." *Id.*, col. 1, lines 6-11. In addition to the real time language, which appears throughout the '704 patent, the parties disagree about the interpretation of certain elements of claims 1 and 16, which claim:

> 1. A transcription network comprising:
> transcription means for generating transcript signals representative of spoken words in real time;
> an attorney's terminal receiving the transcript signals generated by said transcription means for display;
> an associate's terminal receiving the transcript signals generated by said transcription means for display;
> said associate's terminal providing for the generation of messages to be transmitted to said attorney's terminal, and, prior to transmissions, providing for the association of the generated messages with selected portions of the transcript signals; and
> said attorney's terminal providing for the display of the selected portions of the transcript signals through access to the associated messages received from said associate's terminal.
> \* \* \*

16. A transcription network comprising:
   transcription means for producing transcript signals representative of spoken words in real time;
   a plurality of examining terminals receiving and displaying transcript signals produced by said transcription means;
   a first communication link connected to provide for the exchange of messages between said examining terminals;
   a plurality of defending terminals receiving and displaying transcript signals produced by said transcription means; and
   a second communication link isolated from said first communication link and connected to provide for the exchange of messages between said defending terminals.

U.S. Patent No. 5,369,704, col. 33, lines 4-19; col. 34, lines 36-51.

The parties first dispute whether these claims dictate that the associates' terminals receive the transcript signals via the attorneys' terminals. The defendants argue that the claims disclose terminals connected in series. Engate argues that that setup is simply one embodiment and that serial connection is not required under the claim language; according to Engate, the claims also read on a "hub and spokes" setup where all of the terminals receive the transcribed signals directly from the court reporter. On this the Court agrees with Engate; the claim language and the specification both suggest that the associates' terminals may receive the initial transcript signal the same way as the attorneys' terminals do, i.e., directly from the CAT system. *See id.*, col. 7, lines 12-18 ("Specifically, the attorney's terminal and associate's terminal receive text signals representative of spoken words from the reporter's terminal via the communication link, and display the text."); col. 16, lines 13-15 ("Referring back to FIG. 1, CAT system 13 communicates a sentence down-line to terminals 15, 16, 17, 18 when that sentence has been fully transcribed."). To support their contention, the defendants point to a passage from the "preferred embodiment" section of the specification. The cited passage unquestionably describes a system wherein the CAT system communicates directly with the lead

examining and lead defending attorney terminals, which then in turn communicate with the respective down-line associates' terminals. *See* U.S. Patent No. 5,369,704, col. 8, line 67 - col. 9, line 9. But claims are not limited to the preferred embodiment disclosed in the specification. Thus, although the preferred embodiment routes the communication from the reporter's terminal through the CAT system to the lead attorneys terminals and then to the associate attorneys' terminals, nothing in the claim language requires that setup. We are therefore not at liberty to read this limitation into the claims. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 231 F.3d 859, 874 (Fed. Cir. 2000) (citing *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988); *SRI Int'l. v. Matsushita Electric Corp. of American*, 775 F.2d 1107, 1121 (Fed. Cir. 1985)).

The parties also dispute whether the associate's terminal must receive the transcript signals in "real time." The defendants argue that they must; Engate argues that no such limitation appears in the claim language. Based on the claim language, the Court agrees with the defendants. Although it is true that the element relating to the associate's terminal does not contain the phrase "real time," the same is true of the element relating to the attorney's terminal. U.S. Patent No. 5,369,704, col. 33, lines 9-10, 7-8. And no one disputes that the attorney's terminal receives the transcript signals in real time. Moreover, in light of our ruling above that the associates' terminals may receive the transcription directly from the CAT system, this is the only logical reading of the claims, and indeed, the same language we cited above compels this conclusion. Finally, as the defendants note, to the extent the claim language leaves any room for doubt, the prosecution history confirms that the associates' terminals receive and display the transcript signals in real time. *See* Bennett's PTO Response of March 28, 1994, p.12 ("Receiving and displaying the transcript signals in real time, an associates [sic] terminal
6

also provides for the generation of messages and the association of such messages with selected portions of the transcribed signals. . . . In contradistinction, Sprague, et al discloses none of these limitations directed to providing contextual message exchange in a real time transcription environment . . . .").

3.  The '395 Patent - Claim 7

United States Patent No. 6,026,395, issued February 15, 2000, discloses a "down-line transcription system having real-time generation of transcript and searching thereof"; the patented invention relates to "a method and apparatus for providing context sensitive searching of a current transcript, other case evidence and case law which may be locally or remotely located." U.S. Patent No. 6,026,395, col. 1, lines 31-34. The parties disagree about the construction of only claim 7, which claims:

> A method performed by a computing system during a proceeding in which a transcript representative of spoken words is generated in real-time, the method comprising:
> generating a transcript in real time;
> storing the transcript;
> accepting, during generation of the transcript, a user input representative of a first search request;
> identifying at least a portion of the stored transcript corresponding to the first search request; and
> displaying, during generation of the transcript, the at least a portion of the transcript identified.

U.S. Patent No. 6,026,395, col. 26, lines 31-42.

The parties dispute whether this claim covers the CAT system only (defendants' position) or whether the claim would also cover both a CAT system and a downline attorney terminal capable of performing certain functions (Engate's position). By its plain language, the claim covers both the CAT

7

system and the terminal, which serves the user input and search functions, as well as the display function. This construction is further supported by the specification. For example, both the summary of the invention section and the description of the preferred embodiment show that the attorney terminal is a necessary component of the search functionalities. *See* U.S. Patent No. 6,026,395, col. 3, lines 29-53 ("These and other objects of the present invention are achieved *in an attorney terminal* for performing database searching . . . .") (emphasis added); *id.*, col. 5, lines 33-38 (explaining that searching is accomplished through the attorney terminal either by accessing databases directly "*or indirectly through requests through the CAT system 13, which manages the searching via a communication link 31.*"). In fact, the specification teaches that to the extent any of the components is fungible, it is the CAT system terminal, not the attorney terminal:

> Although preferred, neither a keyboard nor a screen are necessary for the CAT system 13. In fact, the terminal itself, i.e., the functionality thereof, might exist within other nodes on the transcription network. For example, the functionality of CAT system 13 might be fully distributed within the recorder 11 and/or the examining attorney terminal 15.

*Id.*, col. 5, lines 54-61. Based on this evidence, the Court concludes that Engate's construction is the proper one: claim 7 reads on a system containing an attorney terminal and a CAT system.

4. <u>The '245 Patent - Claim 5</u>

United States Patent No. 5,740,245, issued April 14, 1998, is a continuation of the '704 patent; it discloses a "down-line transcription system for manipulating real-time testimony" and claims, in the only disputed claim,

> 5. A transcription network for use by attorneys in the examination of a witness comprising:
>     transcription means for generating transcript signals representative of spoken

words in real time;
        a terminal capable of performing a predefined function;
        the terminal receiving the transcript signals from the transcription means and comprising evaluation means for evaluating the transcript signals as they are received to determine whether the transcript signals contain a predefined word selection; and
        the terminal responding to the evaluation means to perform the predefined function.

U.S. Patent No. 5,740,245, col. 32, lines 3-15.

The parties disagree as to the proper interpretation of the "predefined function" element. The defendants argue that this element should be construed such that "predefined function" refers only to "the display of potential objections in a communications window." Defendants' Brief, p. 9. Engate argues that the predefined function "includes any function that a terminal is capable of performing." Engate's Brief, p. 7. The specification contains scant reference to this aspect of the claims. The only passage of the specification relating to this claim deals with objections, the importance of an attorney being able to make them seasonably, and the way in which the patented invention furthers that goal:

> Objections to form must be seasonable, therefore timing is of utmost importance. To speed up the objection process, AI [artificial intelligence] software routines analyze the form of each question and the content of the answer during and immediately after translation to provide various potential objections that the examining attorney may want to take into consideration in attempting to achieving [sic] good evidentiary form. For example, a search is made on each question for phrases such as "you said" or "you stated" or "you say". If found, the AI routines immediately send a potential objection to the communication windows indicating that the question possibly mischaracterizes the witnesses [sic] earlier testimony. . . . Similarly, for example, answers are analyzed with focus on words such as "said" and "stated" to identify potential hearsay therein.

U.S. Patent No. 5,740,245, col. 22, lines 31-48. Although this passage certainly contemplates the function described by the defendants, reading this limitation into claim 5 would render claim 6 meaningless. Claim 6, which depends from claim 5, claims

9

> [t]he transcription network of claim 5 wherein the predefined word selection used by the evaluation means comprises a set of words indicative of a legal objection to the spoken words as represented by the transcript signals, and wherein the predefined function caused by the evaluation means comprises the generation of a message indicating the possibility of the legal objection.

U.S. Patent No. 5,740,245, col. 32, lines 15-21. Given the limitation in claim 6, claim 5 must be broader than defendants urge. The Court agrees with Engate that the predefined function referenced in claim 5 is not limited to the evaluation and objection-raising features urged by defendants; the limitation in claim 6, the dependent claim, cannot be read into claim 5. *See Robotic Vision Systems, Inc. v. View Engineering Inc.*, 189 F.3d 1370, 1376 (Fed. Cir. 1999). *See also Karlin Technology, Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999) (under doctrine of claim differentiation, limitations stated in dependent claims are not to be read into independent claim from which they depend) (citing *Transmatic, Inc. v. Gulton Industries, Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995)).

### 5. The '256 Patent - Claim 25

This patent, which is a continuation of the '704 and '245 patents, discloses a "networked stenographic system with real-time speech to text conversion for down-line display and annotation." Generally speaking, the '256 patent allows for the marking of transcribed text with thoughts and notes for later review or use. It claims, insofar as is relevant here:

> 1. A transcription network utilized during a testimonial proceeding by a user, the transcription network comprising:
>     an attorney terminal having a user interface;
>     a stenograph system that converts spoken words to text and delivers the text to the attorney terminal for real time display; and
>     the user interface of the attorney terminal enabling the user to select portions of the delivered text and associate supplemental information with each of the selected

10

> portions during the testimonial proceeding.
>
> * * *
>
> 25. The transcription network of claim 1 wherein the attorney terminal enables the user to establish a list of issues for use during the testimonial proceeding, and wherein the attorney terminal records an identification of portions of the text related to a selected issue.

U.S. Patent No. 5,884,256, col. 31, lines 29-38; col. 33, line 8-col. 34, line 2.

The parties' dispute concerns whether the attorney terminal referenced in claim 25 *automatically* associates transcript text with categories provided by the attorney; defendants argue that it does, and Engate argues that the association may, but need not, be automatic. The specification clearly shows that *some* marking may be accomplished manually with attorney input. For example, in the preferred embodiment, "if an important answer or definition has been given by a witness, the examining attorney can mark the Q & A with an asterisk"; in fact, the attorney can manually mark questions and answers at a time outside of the proceeding, when the attorney terminal is not even connected to the CAT system. *Id.*, col. 18, lines 33-35, 48-51. Additionally, the specification teaches that marking, in the context of associating or annotating objections and demeanor notes with text, may also be achieved manually. *See id.*, col. 23, lines 32-41. At the hearing Engate cited Figure 6b, which shows that an attorney can manually associate supplemental information with selected text during the proceeding. But none of these references deals with the particular type of association discussed in claim 25, i.e., the association of transcript text with the pre-prepared list of issue categories created by the attorney.

The language of the claim, however, supports the defendants' position. Claim 25 has two parts: the first part deals with the creation of the list of issues and the second part deals with the association of

portions of the transcript with those issues. With respect to the first part, the claim teaches that the *terminal* enables *the user* to create a list of issues; in other words, this step allows for user input. But with respect to the second part, the claim teaches that the *terminal* itself (without user input) records the question and answer numbers associated with the particular issue category. The patentee could easily have repeated the "enables the user" language in the latter element, but he did not do so. The one sentence the Court could find in the specification dealing with this precise issue supports this conclusion. After discussing how the attorney can setup an outline of issues and categories, the specification states that "terminals 15 and 17 record the range of the Q & A numbers which occur while within each specific category or subcategory." *Id.*, col. 22, lines 39-40. Based on the language of the claim, the Court agrees with the defendants that the association claimed in claim 25 is automatic.

6. The '141 Patent

United States Patent No. 5,970,141 is a continuation of the '245 and '704 patents; broadly speaking, the patent discloses a means for converting words into text. The parties' disagreement on this patent concerns claims 4 and 6, which depend from claim 1. The relevant claims read as follows:

> 1. A transcription network utilized during a testimonial proceeding, the transcription network comprising:
>     an attorney terminal;
>     a converter assisting in the conversion of spoken words to text;
>     a remote terminal disposed at a location remote from the attorney terminal and the converter;
>     the converter delivering the text to the attorney terminal and to the remote terminal for real time display; and
>     the remote terminal supporting communication of messages regarding the real time display to the attorney terminal.
>     \* \* \*
> 4. The transcription network of claim 1 wherein the messages are associated with portions of the text.

\* \* \*

> 6. The transcription network of claim 1 further comprising an additional terminal communicatively coupled to the converter but not communicatively coupled to attorney terminal.

U.S. Patent No. 5,970,141, col. 31, lines 41-52, 58-59, 64-67.

The parties dispute the meaning of the word "converter." Engate contends that converter can mean anything used by the CAT system to convert digital coded signals representative of verbal communications to alphabetic and numeric text. The defendants, on the other hand, contend that converter means "voice recognition software and/or hardware in the form of an A/D converter board run on a computer and connected to a microphone." Defendants' Brief, p. 15. Construing these claims to read on a network wherein the converter is a stenographic system, the defendants argue, would render claim 8 redundant. Claim 8 reads as follows:

> 8. A transcription network utilized during a testimonial proceeding, the transcription network comprising:
> an attorney terminal;
> a stenographic system assisting in the conversion of spoken words to text and in the characterization of at least portions of the text as questions and answers;
> a remote terminal disposed at a location remote from the attorney terminal and the stenographic system;
> at least one communication link; and
> the stenographic system delivering the text for real time display at the attorney terminal and at the remote terminal via the at least one communication link.

U.S. Patent No. 5,970,141, col. 32, lines 6-17.

Even if the Court were to agree that defining "converter" to include a stenographic system renders this claim redundant – and the additional elements of claim 8 suggest that this may not necessarily be the case – this argument would not justify limiting "converter" to voice recognition software and hardware; at best, under defendants' theory, the word converter should be construed to

13

mean anything, other than a stenographic system, that converts signals to text.

The defendants argue that because the specification uses "converter" to mean only voice recognition software, we should limit the term to that meaning; at the January 3 hearing they cited *Scimed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001), to support their position. The cases coming out of the Federal Circuit instruct that we must construe claims *in light of* the specification, but that we must never read limitations from the specification into the claims. *See Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 261 F.3d 1329, 1338 (2001). "It is the *claims* that measure the invention." *SRI International*, 775 F.2d at 1121 (emphasis in original). In *Scimed*, the case cited by the defendants, the court limited the claims of the patent-in-suit because the language of the specification *expressly* disavowed a broader interpretation: the court held that the claims read only on catheters having coaxial – as opposed to dual – lumens not only because those were the only lumens mentioned in the specification, but also because the patents distinguished the prior art on the basis of the lumen type, and the specification expressly stated that the description governed "all embodiments of the present invention contemplated and disclosed herein . . . ." *Scimed*, 242 F.3d at 1343-44. In other words, the patentee in *Scimed* "clear[ly] disclaim[ed] subject matter that, absent the disclaimer, could have been considered to fall within the scope of the claim language." *Id.* at 1344. That is not the case here. It is true that, for the most part, the specification addresses an embodiment where the "converter" is the stenographic system. And the one alternative embodiment discussed is a setup where the "converter" involves voice recognition software. But the patentee did not limit the patented invention to those embodiments; on the contrary, the patentee stated that the voice recognition setup is "*an* alternate embodiment" – not *the*

14

alternate embodiment. U.S. Patent No. 5,970,141, col. 7, line 49. And, in marked contrast to the *Scimed* patent, the '141 patent wraps up with a statement that additional embodiments are not disclaimed: "Additionally, it is obvious that the embodiments of the present invention described hereinabove are merely illustrative and that other modifications and adaptations may be made without departing from the scope of the appended claims." *Id.*, col. 31, lines 36-40. In short, the '141 patent did not expressly disclaim converters other than voice recognition software, and reading such a limitation into the claim would violate basic claim construction principles. Accordingly, we adopt Engate's construction of the "converter" element as used in claim 1 and dependent claims 4 and 6.

7. <u>The '186 Patent</u>

United States Patent Number 5,878,186, issued March 2, 1999, is a continuation in part of the '704 patent. Generally speaking, it relates to a method for synchronizing audio signals with transcribed text. The patent claims, in part,

> 1. A transcription system having a stenographic recorder that receives key-strokes representative of a group of spoken words that are spoken during a first time period, and said stenographic recorder generating, during a second time period, signals corresponding to the key-strokes received, wherein the first and second time periods are not in time synchronization, said transcription system comprising:
>     a terminal, communicatively interconnected to the stenographic recorder, which transcribes signals generated by the stenographic recorder into corresponding alphabetic and numeric text;
>     recording means for creating a recording of the group of spoken words;
>     a link between said terminal and said recording means, said terminal operating across said link to create associations between recorded spoken words and corresponding alphabetic and numeric text; and
>     analysis means for automatically identifying a third time period that provides better time synchronization with the first time period than does the second time period.
>                                           \* \* \*
> 3. A transcription system used to transcribe spoken words, comprising:
>     a recorder for storing in sequential locations audible signals representative of

spoken words as each of the words is spoken, and said recorder being capable of
indicating a current storage location;
  a terminal communicatively interconnected to said recorder;
  input means responsive to manual input for generating input signals, and for
delivering the input signals to said terminal as such signals are generated;
  said terminal transcribes the input signals received from the input means, and, as
the input signals are received, said terminal selectively associates current storage
locations with the input signals;
  said recorder also being controllable by said terminal to selectively access a
portion of the stored audible signals based on the storage location of the portion; and
  analysis means for adjusting the associated storage locations to provide better
time synchronization between the input signals and the stored audible signals.

U.S. Patent No. 5,878,186, col. 15, line 50-col. 16, line 26.

With respect to this patent, the parties dispute only the phrase "communicatively interconnected." The defendants argue that this language means that the communication links – the link between the stenographic recorder and the computer terminal in claim 1 and the link between the recorder and the computer terminal in claim 3 – must be two-way, in other words, that it contemplates a two-way data flow. Engate contends that neither link needs to be two-way. The defendants argue that their construction is supported by both the dictionary and the specification. But the dictionary, which defines "interconnect" as "to connect mutually or with one another" and "connect" as "to join, fasten or link together," Webster's Third New International Dictionary, Unabridged, 1177, 480 (1993), adds little to the mix. The specification section upon which the defendants rely indeed suggests that the CAT system must be able to communicate with the court reporter; it states: "if the absolute barrier is reached before identifying the beginning of a dead zone, the CAT system 13 first indicates to the court reporter that two units of speech by the same speaker have been indicated." U.S. Patent No. 5,878,186, col. 12, lines 12-18. But this language appears in the description of the preferred

embodiment, and nothing in either the remainder of the specification or the claims suggests that this limitation should be written into the claims. Accordingly, we agree with Engate that the phrase "communicatively interconnected" reads on either one-way or two-way communication between the terminal and the stenographic recorder (claim 1) or recorder (claim 3).

8. The '675 Patent

United States Patent No. 6,023,675 states that it is a "division" of the '952 Patent (which is in turn a continuation of the '186 and '704 patents). The asserted claims are generally directed to the delivery of a textual record to an off-site or remote location and the association of that record with a video record or an audio record (or both) generated during a deposition or trial. The parties disagree regarding certain elements of claims 3 and 8. Claim 3 depends from claim 1, and claim 8 depends from claim 7, which in turn depends from claim 1. We quote the relevant claim language below.

> We claim:
> 1. A method utilized during a testimonial proceeding, the method comprising:
>     capturing representations of spoken words in real time at a first premises;
>     converting the representations into text in real time;
>     delivering the text in real time to a remote system, the remote system being disposed at a second premises;
>     communicatively coupling at least one terminal and the remote system;
>     delivering, by the remote system, the text in real time to the at least one terminal, the at least one terminal being disposed at at least a third premises; and
>     displaying at the at least one terminal the delivered text for real time review.
>     \* \* \*
> 3. The method of claim 1 further comprising:
>     capturing audio signals corresponding to the spoken words;
>     delivering the captured audio signals to the at least one terminal via the remote system; and
>     reproducing at the at least one terminal the delivered audio signals.
>     \* \* \*
> 7. The method of claim 1 further comprising:
>     capturing video corresponding to the spoken words;

>>>>delivering the captured video to the at least one terminal via the remote system; and
>>>>reproducing at the at least one terminal the delivered video.

>8. The method of claim 7 further comprising:
>>associating the captured video with the text; and
>>accessing, by the at least one terminal, portions of the captured video via the delivered text.

U.S. Patent No. 6,023,675, col. 15, line 63-col. 16, line 11; col. 16, lines 16-23, 34-44.

First, although both sides agrees that the signals must be *captured* in real time, they disagree about whether the signals must be reproduced at the remote terminal in real time. Claims 3 and 7, unlike claim 1, do not specify that the signals must be reproduced at the remote terminals in real time. And the specification clearly contemplates that the remote terminals would be able to make non-real time use of the delivered signals. *See* U.S. Patent No. 6,023,675, Fig. 7 and col 15, lines 5-13 (explaining an embodiment wherein the remote terminals can "receive virtual real-time video and audio on demand" and they can also play back stored signals "so that the transcript can be selectively parsed and reviewed during and after the proceeding."). Accordingly, the Court finds that claim 3 does not require the audio or video to be reproduced at the remote terminal in real time; to the extent the parties disagree on the issue as to claim 7 or 8, the same construction would apply.

Second, the parties disagree about the proper construction of the "associating the captured video with the text" element of claim 8. Engate argues that this element requires simply that the text and video records are associated; the defendants argue that "associating" means "synchronizing," which in turn means that the CAT system subtitles the video recording with the text in real time. According to the specification, synchronizing and associating refer to the CAT system's ability to match up the video

record and the transcript or the audio record and the transcript. For example, the patent speaks of synchronization in terms of eliminating the hiccups created by the lag when a court reporter has to tell the system when one speech unit ends and another begins. *See* U.S. Patent No. 6,023,675, col. 5. Neither the claim language nor the specification specifies what the synchronized record looks like, and neither limits the associating element to the creation of subtitles. Although the Court was initially at a loss to imagine how else this association could be achieved, at the January 3 hearing, counsel for Engate described a way in which the different signals could be synchronized through tiled windows on a computer screen. Nothing in either the claim language or the specification would exclude this manner of association. Accordingly, the Court will not limit this element as defendants urge. Claim 8 is broad enough to read on association schemes other than those utilizing subtitles.

## CONCLUSION

The disputed claim terms are construed in accordance with the conclusions set forth in this Memorandum Opinion and Order. Plaintiff's motion for summary judgment of infringement [docket item 79-1], filed before the claim construction process began, is stricken without prejudice to refiling such a motion in light of the present ruling. The case is set for a status hearing on January 27, 2003 at 9:30 a.m.

Dated: January 30, 2003

MATTHEW F. KENNELLY
United States District Judge