# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6204 | **DATE** | 6/13/2003 |
| **CASE TITLE** | | Engate vs. Esquire Deposition | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons explained in the attached opinion, the Court denies Engate's motion for summary judgment of direct literal infringement (116-1) and grants the cross motions for summary judgment on the issue of direct literal infringement filed by Atkinson-Banker (122-1), WordWave (119-1) and Esquire (124-1). The case is set for a status on June 19, 2003 at 9:30 a.m. to discuss what, if anything, remains of the case in light of the Court's rulings today.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 1 6 2003 | |
| ✓ | Docketing to mail notices. | date docketed | 145 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| OR | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 JUN 14 PM 3: 04 | date mailed notice |
| | | Date/time received in Central Clerk's Office | mailing deputy initials |



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ENGATE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 01 C 6204** |
| | ) | |
| ESQUIRE DEPOSITION SERVICES, LLC, | ) | |
| ATKINSON-BAKER, INC. and | ) | |
| WORDWAVE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Engate Inc. has sued three court reporting agencies, Atkinson-Baker, Inc., Esquire

Deposition Services, LLC, and WordWave, Inc., for infringement of various patents directed to

real-time transcription systems used by court reporters and attorneys. Engate alleges that the

defendants infringe the patents by using the patented processes in connection with the court

reporting services their court reporters provide and by offering to sell services that utilize the

feature functionalities disclosed in the patents, both in violation of 35 U.S.C. §271(a). The Court

previously construed the disputed claim language, *see Engate v. Esquire*, No. 01 C 6204, 2003

WL 223306 (N.D. Ill. Jan. 30, 2003), and resolved motions for summary judgment filed by the

defendants on the question of whether they could be liable for the acts of the court reporters who

worked for them as independent contractors. *See Engate v. Esquire*, 236 F. Supp. 2d 912 (N.D.

Ill. 2002). On the latter, we held that the defendants could not be liable for those acts given the

absence of any evidence suggesting that the defendants directed the court reporters to use

infringing real time systems and software or hired the reporters for the purpose of using those systems or software. *Id.* at 915. In ruling on the earlier summary judgment motions we specifically left open two questions: (1) whether the defendant agencies could be held vicariously liable for any infringement committed by the court reporters who worked for them as employees (as opposed to independent contractors), and (2) whether the defendant agencies directly infringed the patents in suit by "offering for sale" the patented inventions. Today, in connection with the parties' cross motions for summary judgment, we address those questions.

## Discussion

### A.    Applicable Legal Standards

Summary judgment is appropriate, in a patent case as in any other case, where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.,* 911 F.2d 670, 672 (Fed. Cir. 1990). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,* 145 F.3d 1303, 1307 (Fed. Cir. 1998). We grant the motion only when "no 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Patent infringement occurs when someone "without authority makes, uses, offers to sell, or sells any patented invention . . . ." 35 U.S.C. §271(a). We analyze infringement in two steps: first, we determine the meaning and scope of the patent claims asserted to be infringed; and

2

second, we compare the properly construed claims to the product or process accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Having construed the disputed claim language, we move on to step two. To show literal infringement of its patents, the patentee "must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997). *See also Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim . . . ."). Whereas claim construction is a question of law, infringement is a question of fact. *Prima Tek*, 318 F.3d at 1148 (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir.1998), *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

B.    The Parties' Motions

Engate alleges that Esquire and WordWave directly infringe the patents by allowing their employees to use infringing real time reporting services and that all three defendants directly infringe the patents by offering for sale infringing real time reporting services. Engate alleges, in other words, that some of the defendants have violated §271(a)'s "use" prohibition and all of them have violated §271(a)'s "offer to sell" prohibition. Engate initially alleged that the defendants directly infringed twenty-six claims from twelve patents. In its summary judgment motion it has narrowed the universe of claims to seven from seven of the patents: (1) claim five of U.S. Patent No. 5,740,245; (2) claim four of U.S. Patent No. 5,884,256; (3) claim four of U.S. Patent No. 5,926,787; (4) claim twenty-six of U.S. Patent No. 5,949,952; (5) claim one of U.S. Patent No. 6,023,675; (6) claim twelve of U.S. Patent No. 6,282,510; and (7) claim sixteen of U.S. Patent No. 5,369,704. The defendants argue that they are entitled to summary judgment on

Engate's allegation that they have directly infringed these seven claims, as well as the remaining nineteen claims initially asserted by Engate.

1.    Direct Infringement Based on "Use"

We first consider Engate's claim that the defendants violate §271(a) when their court reporters perform services that use the methods and functionalities disclosed in the patents. As a result of our earlier summary judgment ruling, this claim focuses only on the activities of the court reporters who work for Esquire and Wordwave as employees (as opposed to independent contractors). *See Engate v. Esquire*, 236 F. Supp. 2d at 915 & n.2.[1]

Engate argues that it is entitled to judgment as a matter of law that the methods used and the services provided by the defendants' employee court reporters read on each and every element of the seven claims listed above. And ordinarily, in a case presented to us in this context, we would simply compare the accused method or process with the patented method or process to see whether this is so. The difficulty here, however, is that Engate has failed to nail down exactly what the court reporters do and exactly what the attorneys who retain the court reporters' services do that together or separately is claimed to amount to direct infringement. Engate has stated that the defendants generally provide real time court reporting services, *see* Engate's Statement of Facts ¶3, but it has made no attempt to show that those services are provided by the employee court reporters. Nor has Engate attempted to show that the systems and methods used by the employee court reporters read on each element of the transcription networks and methods disclosed in the asserted claims. By proceeding in this way, Engate

---

[1]It is undisputed that Atkinson-Baker hired court reporters on an independent contractor basis only; it has no employee court reporters. Thus, Engate's use claim is directed against Esquire and WordWave only.

appears to suggest that the mere use of a real time court reporting system is enough to prove infringement. But that is not true. The patents in suit do not cover real time court reporting generally; rather, they cover various methods and means for performing certain functions that make such reporting more better and easier to use. Thus Engate has no right to prevent the use of real time reporting in and of itself – and the Court has never understood this to be the nature of Engate's claims. What Engate has is the right to prevent the unauthorized performance of the methods disclosed in the patents and the unauthorized use of the methods or functionalities disclosed in the patents.

With respect to Engate's "use" allegations, the Court must first consider whether Engate is required to show that the defendants' employees themselves "use" – more accurately, perform – each element of an asserted claim, or whether it would be enough for Engate to show that the employees do so in conjunction with the attorneys who retain them. As the Court understands Engate's motion, it seeks summary judgment on its claim of direct infringement under §271(a), not on a claim of contributory infringement under §271(c). But it is not clear that §271(a) covers this type of "joint infringement" situation.

Although some courts have recognized a "joint tortfeasor" theory of liability in patent cases, they have done so in the context of contributory, not direct, infringement. *See, e.g., Mahurkar v. C.R. Bard, Inc.*, No. 01 C 8452, 2003 WL 355636 (N.D. Ill. Feb. 13, 2003) (recognizing that the joint tortfeasor theory is viable in patent cases, but holding that, to proceed under that theory, the plaintiff "must first show that [the defendant] itself engaged in one of the activities prohibited by Section 271(a)"; in other words, the plaintiff must first prove direct infringement). *See also Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S.

5

476, 500-01 (1964) (discussing joint infringement in a way that makes clear the court means contributory infringement); *Superior Merchandise Co., Inc. v. M.G.I. Wholesale, Inc.*, Nos. Civ. A 98-3174, Civ. A 99-3492, 2000 WL 322779, at *13 (E.D. La. March 27, 2000) (same).

And to the extent "joint infringement" can be synonymous with "direct infringement," as opposed to "contributory infringement," the Federal Circuit has rejected the theory in situations analogous to the one presented here. In *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565 (Fed. Cir. 1983), for example, the holder of a patent involving a process for making photographic printing plates sued a company that performed several steps in the process and then sold the resulting product to customers, who then performed the remaining steps. The Federal Circuit held that the defendant could not be liable for direct infringement:

> It is undisputed that Advance manufactured and sold "wipe-on" plates comprising an anodized aluminum sheet that had been treated with an aqueous solution of sodium silicate, and that its customers applied a diazo coating to those plates. Because the claims include the application of a diazo coating or other light sensitive layer and because Advance's customers, not Advance, applied the diazo coating, Advance cannot be liable for direct infringement with respect to those plates but could be liable for contributory infringement.

*Id.* at 1567-58.

Similarly, in *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255 (Fed. Cir. 2003), the accused infringer argued that it could not have violated §271(a) because it did not itself perform the methods covered by the patents, but only sold equipment that could be used to do so. After noting that "[a] method claim is directly infringed only by one practicing the patented method," the Federal Circuit held that the defendant's acts could not amount to direct infringement; if the patentee could show, however, that someone using the defendant's products infringed the patent, the defendant might be liable for "active inducement of infringement or

6

contributory infringement of a method claim under 35 U.S.C. §271(b) and (c)." *Id.* at 1267 (quoting *Joy Technologies*, 6 F.3d at 775). The Court is not certain whether Engate has asserted a claim under §271(b) or (c). But even if it has, those claims are not presently before the Court because the parties' summary judgment motions concern only the issue of direct infringement.

Engate cites *Shields v. Halliburton*, 493 F. Supp. 1376 (W.D. La. 1980), as proof that courts have imposed liability for infringement even where the defendant has not itself performed all of the steps in the process covered by the patent. In *Shields*, the court found that the defendants had "singularly and jointly infringed" the plaintiff's process patents on three occasions. *Id.* at 1389. The court found that, on two of those occasions, the defendants themselves had performed each step in the process. *Id.* at 1388. On the third occasion, the court determined that the defendants had performed all but one of the steps. And on that step, the evidence at least established that someone had done it, even if it did not establish that it was the defendants. *Id.* In other words, the evidence conclusively established that each step in the process had actually been performed. Thus *Shields* actually brings us to the next point: before we even reach the question of whether the defendants can be liable for direct infringement based on the joint actions of their employees and the attorneys who retain them, Engate would first have to demonstrate that those joint actions actually implicated every element of the asserted claims. As we will explain below by examining the particular asserted claims, Engate has not met this burden.

Engate alleges that the defendants infringe three claims that, on their face, demonstrate that they are "method" claims, i.e., claim that disclose a particular method for achieving a desired task or result: claim 26 of the '952 Patent covers "[a] method for facilitating the use of

7

information from a testimonial proceeding . . . ," U.S. Patent No. 5,949,952, col. 17, lines 19-20;

claim 1 of the '675 Patent covers "[a] method utilized during a testimonial proceeding . . . ," U.S.

Patent No. 6,023,675, col. 15, line 64; and claim 12 of the '510 Patent covers "[a] method for

facilitating the use of information from a testimonial proceeding . . . .," U.S. Patent No.

6,282,510, col. 16, lines 32-33. For a method claim to be infringed, Engate must show that the

defendants did more than simply provide the equipment necessary to accomplish the claimed

methods; it must show that the claimed method or process was *actually performed. See Joy

Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is *directly*

infringed only by one practicing the patented method.") (emphasis in original); *Standard Havens

Products, Inc. v. Gencor Industries Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) (a method or

process claim is directly infringed only when the process is performed). It has not done so.

With its motion, Engate provided charts containing an element-by-element analysis for

each claim purportedly demonstrating infringement. But a careful review of the charts shows

that they do not achieve their intended result. For example, claim twelve of the '510 Patent

discloses:

> A method for facilitating the use of information from a testimonial proceeding,
> the method utilized at least in part during the testimonial proceeding, the method
> using a transcription system, a capture system and a terminal having a screen, the
> method comprising:
>   converting, using the transcription system, spoken words to text in real time;
>   capturing, using the capture system, audio signals representative of the spoken
> words in real time;
>   associating the audio signals with the text;
>   storing the text and the associated audio signals;
>   displaying the text on the screen for real time review;
>   accepting an input and performing a search of the stored text using the accepted
> input; and
>   reproducing portions of the spoken words from portions of the stored audio

> signals corresponding to portions of the stored text located in response to the
> search.

U.S. Patent No. 6,282,510, col. 16, lines 32-49. Engate contends that the final two elements of

this claim respectively are infringed because "[d]uring the proceeding, the reporter *can* perform a

search of the textual transcript" and because "[u]pon locating the relevant portion of the textual

transcript, the reporter *can* play the audio record corresponding to the located text." Engate's

Memorandum in Support of Motion for Summary Judgment of Direct Literal Infringement, p. 12

(emphasis added). In other words, Engate argues only that the reporters "can" perform these

elements of the method, not that they actually perform them. And the evidence upon which

Engate's assertions are based does not remedy this deficiency. Engate relies on the deposition

testimony of William Greenley, an "area president" for LegaLink. When asked about the

possibility of synchronizing text and audio during a deposition, Greenley stated that he was

aware of a product called AudioSync, "which is a product of just about all the CAT systems now

that a court reporter may or may not use; some do and some don't. But it's not a service that

LegaLink offers." Greenley Dep., pp. 111. He stated that AudioSync is

> a backup. It's a digital recording of the proceedings that can be played back when
> the court reporter is editing their transcript. And if there was a word they didn't
> quite understand or they wanted to hear it again, they can play it back and it's
> synchronized to the text. It allows them to hit one key stroke and they can hear
> the words over again.

*Id.* And he again stated that it was up to the court reporter to use or not use AudioSync. *Id.* This

evidence does not establish that any court reporter – let alone one working for Esquire or

WordWave – performed services that encompass these elements of the claim. Engate has not

attempted to explain how Greenley's testimony establishes that the reporting methods used by

9

the defendants' employees are the same as the methods disclosed in the patent.

The same deficiency exists with respect to Engate's proof concerning the other two method claims. To prove that the defendants' employees infringe claim 26 of the '952 Patent, Engate would have to show, among other things, that the employees "captur[e] . . . video images showing speaking of the spoken word in real time; associat[e] the video images with the text; deliver[] the text to the terminal; and display[] the text on screen for real time review." U.S. Patent No. 5,949,952, col. 17, lines 26-31. But the evidence Engate offers establishes only that "LegaLink offers videotape depositions," and that LegaLink offers the technological capability to perform video synchronization. *See* Engate's Statement of Facts, ¶¶17-18. Nothing Engate offers shows that the defendants' employee court reporters actually perform these services or that, if they do perform these services, they do so using the methods disclosed in the patents. Similarly, in an attempt to prove that the defendants' employees infringe claim 1 of the '675 Patent, Engate has shown only that the technology exists to enable a court reporter and an attorney to perform the method disclosed; its evidence says nothing about whether any of the defendants' employees or their attorney clients have ever actually performed the method taught in the patent. This is puzzling – especially because, to the extent such evidence exists, it would have been easy to obtain from attorneys who have participated in depositions or other legal proceedings reported by the defendants' employees at which the court reporters and attorneys performed every step claimed in the patents.

In addition to the claims that specifically use the word "method," Engate has asserted infringement of four other claims. First, Engate alleges that the defendants infringe claim sixteen of the '704 Patent, the patent from which all of the other patents-in-suit stem. The '704 Patent

"relates to a transcription system used by court reporters; and more particularly, it relates to a method and apparatus incorporating an automatic transcription system for providing real-time use and manipulation of transcribed testimony by attorneys, judges, court reporters, witnesses and clients." U.S. Patent No. 5,369,704, col. 1, lines 6-11. Claim sixteen discloses:

> A transcription network comprising:
> transcription means for producing transcript signals representative of spoken words in real time;
> a plurality of examining terminals receiving and displaying transcript signals produced by said transcription means;
> a first communication link connected to provide for the exchange of messages between said examining terminals;
> a plurality of defending terminals receiving and displaying transcript signals produced by said transcription means; and
> a second communication link isolated from said first communication link and connected to provide for the exchange of messages between said defending terminals.

*Id.*, col. 33, lines 4-19; col. 34, lines 36-51. The plain language of the claim requires multiple terminals on the examining team, and multiple terminals on the defending team. Yet Engate has not even alleged, let alone demonstrated, that any court reporter from Esquire or WordWave has ever performed real time reporting services for attorneys who supply such a setup. Engate simply notes that LiveNote, one of the software products used by the attorneys in real time proceedings, allows for such a setup and that the court reporters' machines and systems can accommodate the use of LiveNote software. This does not establish that the court reporters have performed real time services using a system that reads on each element of the claim, and is therefore not enough to prove infringement. *See, e.g., Builders Concrete, Inc. v. Bremerton Concrete Products Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985) ("Literal infringement requires that the accused device embody every element of the claim."). Indeed, if this were enough to establish liability, every

court reporter in the nation could be charged with infringement simply by virtue of the fact that software such as LiveNote exists, even if it is never used in a system with a plurality of terminals on either side of the table.

Engate also alleges that the court reporters, together with the attorneys who retain them, infringe claim five of the '245 Patent, which reads as follows:

> A transcription network for use by attorneys in the examination of a witness comprising:
>   transcription means for generating transcript signals representative of spoken words in real time;
>   a terminal capable of performing a predefined function;
>   the terminal receiving the transcript signals from the transcription means and comprising evaluation means for evaluating the transcript signals as they are received to determine whether the transcript signals contain a predefined word selection; and
>   the terminal responding to the evaluation means to perform the predefined function.

U.S. Patent No. 5,740,245, col. 32, lines 3-15. While this claim does not specifically use the word "method," it discloses a process for performing a specific function. Thus, performance of that function, not just the ability to perform the function, is a necessary element of the claim. During the claim construction phase of this case, the parties disputed what that function was. We construed the claim such that the "predefined function" included, but was not necessarily limited to, the use of artificial intelligence to prompt objections from an attorney. *See Engate*, 2003 WL 223306, at * 4-*5. But given the plain language of the claim, there still has to be some evidence that the system being used is actually performing *some* predefined function involving the evaluation of a predefined word. Engate has demonstrated, at best, only that the defendants' court reporters have the ability to provide real time reporting services and that the systems they can offer are compatible with software that has the ability to perform such a predefined function.

Totally absent is any evidence that the court reporters and the attorneys actually used their equipment and their software to this end. Again, if this was all that was necessary to prove infringement, Engate would have a claim against every court reporter – and presumably every attorney – simply because LiveNote, which has a function called "autotag" that seems akin to the predefined function contemplated in the patent, exists. Such a result can only obtain through an overreaching of §271(a) that finds no support in the law. The same analysis applies to Engate's claims concerning claim four of the '256 Patent and claim four of the '787 Patent.

To sum up, under *Fromson* and *RF Delaware*, Engate is not entitled to summary judgment on its direct infringement claim against the defendants because it has failed to demonstrate that the defendants' employees actually infringed each element of any asserted claim. Moreover, even if the law permitted Engate to combine the actions of both the court reporters and the attorneys who retain them, Engate has not demonstrated that those combined actions infringed each element of any asserted claim. This is not to say that some court reporters and some attorneys do not infringe the patents; it is just that Engate has not marshaled the evidence to show that this is the case generally or with respect to the defendants' employees particularly. Accordingly, the Court denies Engate's motion for summary judgment on the issue of direct infringement.

We turn next to the defendants' motions for summary judgment on the issue of "use" under §271(a). In their motions, WordWave and Esquire first argue that, consistent with our earlier opinion concerning the independent contractor court reporters, these defendants cannot be held vicariously liable for any infringement by the court reporters who work for them as employees. They argue that they exert the same level of control over the court reporters who

work for them as employees as they do over the court reporters who work for them as independent contractors, i.e., not much. Therefore, the defendants argue, our ruling on the independent contractors should apply with equal force to the employees. We cannot agree; the classification of these court reporters as employees, as opposed to independent contractors, makes a real difference in the law, which routinely imposes vicarious liability for acts committed by employees when it might not do so for acts committed by independent contractors. *See, e.g., Meyer v. Holley*, 537 U.S. 280, 123 S.Ct. 824, 829 (2003) ("[t]raditional vicarious liability rules ordinarily make principals or employers vicariously liable for the acts of their agents or employees in the scope of their authority or employment."); *Cange v. Stotler & Co., Inc.*, 826 F.2d 581, 597 (7th Cir. 1987) (people can avoid vicarious liability by dealing with independent contractors). And absent some authority to suggest that this clearly established principle is suspended in patent law – neither WordWave nor Esquire has cited any such authority – we are unwilling to deviate from it.

Having said this, based on our analysis above, the Court agrees with WordWave and Esquire that summary judgment in their favor is appropriate under the circumstances. First, the asserted claims require some action on the part of an attorney, which means a court reporter could never by his- or herself infringe the patent. Moreover, the evidence does not even demonstrate that the defendants' employees have performed those elements of the claims that relate to the activities of court reporters. WordWave submitted evidence that two of its three court reporter employees do not even provide real time reporting services, *see* Declaration of Alan Vinick, ¶4, which necessarily means that their conduct cannot have infringed Engate's patents. And although the third employee has provided real time services, Engate has offered no

evidence that she has ever provided those services in the context of a deposition or other proceeding in which the feature functionalities disclosed in Engate's patents were used.

The evidence indicates that at least some of Esquire's employees have performed real time court reporting services. But there is no evidence to suggest that they have actually performed the feature functionalities disclosed in Engate's patents. To the contrary, Esquire has offered evidence showing, for example, that no Esquire employee has ever searched transcripts and then played back the corresponding audio during a deposition or other testimonial proceeding, which is a necessary element of claim 12 of the '510 Patent. *See* Further Declaration of Carole Hughes, ¶3. This evidence is unrebutted.

Moreover, even if Engate had offered evidence that the defendants' employees, working together with the attorneys, performed each step taught in any asserted claim or set up and used a transcription network to accomplish the functionality taught in any asserted claim, under *Fromson* and *RF Delaware*, the defendants would still not be liable for direct infringement. They might be liable for contributory infringement or inducement of infringement, but, as we said above, such claims are not before us at this time.

 2. Direct Infringement Based On "Offers to Sell"

We turn next to Engate's "offer to sell" claim. The prohibition against offering to sell patented inventions is a relative newcomer; it was added to the statute in 1994 to satisfy a pledge the United States had made while negotiating the GATT Uruguay Round Trade Related Aspects of Intellectual Property ("TRIPS") Agreements to strengthen the protections afforded patent holders. *See Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251-52 (Fed. Cir. 2000); *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998). As a

result, we have little guidance from the Federal Circuit as to what is and what is not an "offer to sell" within the meaning of §271(a).

The Federal Circuit first considered the meaning of "offer to sell" in *3D Systems*, a case before the court on the issue of personal jurisdiction, After finding that the phrase should be construed by "'look[ing] back to federal law on the conceptualization' of the 'offer to sell' itself," the court found that price quotation letters sent by the defendant to potential customers could "be regarded as 'offer[s] to sell' under §271 based on the substance conveyed in the letters, i.e., a description of the allegedly infringing merchandise and the price at which it can be purchased." *3D Systems*, 160 F.3d at 1379. In *Rotec*, the Federal Circuit reiterated that "§271(a)'s 'offer to sell' liability is defined according to the norms of traditional contractual analysis." 215 F.3d at 1254-55.

Judge Rebecca Pallmeyer recently applied these principles in *Mahurkar v. C.R. Bard, Inc.*, No. 01 C 8452, 2003 WL 355636 (N.D. Ill. Feb. 13, 2003). There, the patentee alleged that the defendant had offered to sell the patented invention through its website and through brochures and other promotional and informational literature. After discussing the history of §271(a) and the "offer to sell" prohibition, the court held that the defendant's activities did not amount to an offer to sell as that phrase has been interpreted by the Federal Circuit because the defendant's website and documentation provided no pricing information and contained no specific information on the accused products; thus, the court held, the patentee had at best established that the defendant "advertised" the accused products. *Id.* at *6. And given the Federal Circuit's decision in *Rotec*, the court reasoned, advertisements – especially those that do not contain specific product information and pricing information – would likely fall outside the

range of what constitutes an offer to sell. *Id.* at *7. This is consistent with general contract principles: advertisements, catalogs, price lists and other promotional materials are generally considered invitations to solicit offers, not contractual offers themselves, unless they contain language of commitment or some invitation to take action without further communication. *See* Restatement (Second) of Contracts §26 (1981).

Beyond the question of whether a particular document amounts to an "offer to sell," we must consider whether the offer to sell covers what is patented; §271(a) does not prohibit offers to sell generally, but only offers to sell "*a patented invention.*" 35 U.S.C. §271(a). With these guiding principles in mind, we consider the evidence concerning each defendants' alleged offers to sell.

In support of Atkinson-Baker's cross motion for summary judgment on the issue, Sheila Atkinson-Baker, the president of the company, stated that Atkinson-Baker has never offered for sale real time reporting services involving the particular and specialized network systems and methods disclosed in Engate's patents. *See* Affidavit of Sheila Atkinson-Baker, ¶¶2, 6-10. To rebut this evidence, Engate provided a page from depo.com's website dated April 2, 2003; it states, in its entirety:

> Realtime court reporting is a cooperative venture between the reporter and the attorney.
>
> The reporter's computerized transcription system translates the stenographic markings in real time and transmits the text along a cable. The attorney or attorneys present can receive or capture this text using any program designed for this purpose.
>
> These are the realtime capture programs that we see used most often by attorneys in our practice. Follow any of these links for more information from the manufacturers about their products.

*See* Engate's Response to the Defendants' Statement of Facts, Exhibit M. The website contains

no information about specific real time products, nor does it reference the methods and systems

disclosed in Engate's patents. And it says nothing about pricing. Based upon this evidence, a

reasonable jury would be hard pressed to find that Atkinson-Baker sells anything, let alone a

"patented invention" in violation of §271(a). Indeed Engate has not even attempted to analyze

how the website page could constitute an offer to sell the methods and functionalities covered by

its patents.

The evidence concerning WordWave's activities likewise falls short. To support its

claim that WordWave "offers to sell" the patented inventions, Engate submitted several excerpts

from LegaLink's website (LegaLink is the court reporting service division of WordWave). The

first states, in very fine print, that

> LegaLink offers a full range of services: schedule depositions online, experience
> the power of interactive RealTime, electronic transcripts, attend depositions via
> the Internet, and videography services such as synchronized text & video,
> videotaped depositions, demonstrative evidence, multimedia trial presentations,
> mock trials and document imaging. For further information about how LegaLink
> can help with your next deposition, court reporting, transcription or videography
> needs, please contact LegaLink at 1-800-662-1466.

Declaration of George C. Summerfield in Support of Engate's Motion for Summary Judgment,

Exhibit H. Another excerpt states that LegaLink offers "cutting edge technology"; it specifically

mentions "Interactive RealTime, electronic transcripts, synchronized text/video depositions,

multimedia trial presentations, and a secure Web repository for key documents." *See* Engate's

Response to Defendants' Statement of Facts, Exhibit D. And yet another lists the equipment LegaLink uses in its video operation to ensure that clients receive the highest quality videographic services. *See id.*, Exhibit E. None of these excerpts describes any of the services or the methods by which they are accomplished with any degree of detail or specificity; nor do they contain any pricing information. More importantly, the website excerpts provide no basis for the Court to evaluate whether any of the services referenced would employ the methods or network systems disclosed in Engate's patents. And Engate has not even addressed that point. Based on this evidence, which is buttressed by deposition testimony of Alan Vinick, WordWave's chief financial officer, that WordWave's website and marketing brochures talk generically about the real time capabilities the company's court reporters offer, but provide no real descriptions of the services and no pricing information, *see* Deposition of Alan Vinick, pp. 12-13, 15-16, the Court concludes that no reasonable jury could find that WordWave (through LegaLink) offers to sell any patented invention.

The "offer to sell" claim against Esquire is a slightly closer call only because the evidence shows that at least one of Esquire's regional offices created and "disseminated" a document listing the "services and products" provided by the company and providing greater detail concerning the nature of those services. *See* Summerfield Declaration, Exhibit I. The document includes the following information concerning Esquire's products and services:

> **Interactive Realtime** - Connect a laptop computer to the reporter's computer by using interactive software such as LiveNote™, Summation™, or e-transcript binder™ to search, annotate and review the testimony as it is occurring.
> **Internet Realtime** - Deposition transcripts can be securely viewed by any number of parties in realtime via the internet using LiveNote™ or Summation™ internet software.

* * *

**Synchronization of Video to Transcript** - Instantly search and retrieve videotaped testimony using your computer.

*Id.* The document also contains some pricing information for San Diego County. *Id.* This document comes closer to satisfying the principles set out in *Rotec* and *3D Systems*, and, under the applicable standards, we would have to give Engate the benefit of the doubt on the issue. The descriptions of the services are hardly detailed, providing just a general overview of the types of things the company can do, and the pricing information included in the document does not appear to relate to any of the categories of services we quoted above (which the Court has assumed – without any guidance from Engate – are the categories of services most likely to implicate the claims of the patents in suit). But certainly we cannot say that no reasonable jury could find an offer to sell in there.

More to the point, however, the document shows, at most, that Esquire offers to sell *something*; it is not evidence that Esquire offers to sell what is disclosed in the asserted claims. Such a demonstration would require more analysis comparing the services generally described in the document with the methods and systems described in those claims. Engate has not argued, for example, that "Interactive Realtime," "Internet Realtime" and "Synchronization of Video to Transcript" – which is what Esquire has arguably "offered to sell" – can be achieved only by means of the methods and systems claimed in the patents. And if that is not the case – and we assume that it is not because Engate did not argue the point – the offer to sell these services, in and of itself, does not amount to direct infringement in violation of §271(a). Thus, Engate is not entitled to judgment as a matter of law on this basis.

## Conclusion

For the reasons explained in this opinion, the Court denies Engate's motion for summary judgment of direct literal infringement [Docket #116-1] and grants the cross motions for summary judgment on the issue of direct literal infringement filed by Atkinson-Baker [Docket #122-1], WordWave [Docket #119-1] and Esquire [Docket #124-1]. The case is set for a status on June 19, 2003 at 9:30 a.m. to discuss what, if anything, remains of the case in light of the Court's rulings today.

Dated: June 13, 2003

_____
MATTHEW F. KENNELLY
United States District Judge