Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6204 | **DATE** | 3/26/2004 |
| **CASE TITLE** | Engate vs. Esquire | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)    ☐ Local Rule 41.1    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Atkinson-Baker and Esquire's motions for summary judgment (153). Defendants' joint motion to strike the declaration of Rhett R. Dennerline is terminated as moot (211-1,2). The defendants' motions for partial summary judgment of invalidity are also terminated as moot (183). Judgment is entered in favor of the defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 9 2004 | |
| | Notified counsel by telephone. | | date docketed | 215 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 9 2004

ENGATE, INC., )
)
Plaintiff, )
)
v. ) Case No. 01 C 6204
)
ESQUIRE DEPOSITION SERVICES, L.L.C. )
and ATKINSON-BAKER, INC. )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Engate, Inc., holds the rights to several patents covering certain functions that can be used by court reporters and attorneys to enhance the utility of real time transcription services – but the patents do not cover real time court reporting generally. *Engate, Inc. v. Esquire Deposition Services, L.L.C.*, No. 01 C 6204, 2003 WL 22117805, at *2 (N.D. Ill. Sept. 10, 2003). Engate sued several court reporting services, including the only two remaining defendants, Esquire Deposition Services, L.L.C., and Atkinson-Baker, Inc., alleging that they infringed Engate's patents. The defendants sought partial summary judgment on Engate's claim that they had engaged in direct infringement, and the Court granted the motion, finding the defendants could not be held vicariously liable for any infringement by independent contractor court reporters who provide the bulk of the defendants' deposition services. *Engate, Inc. v. Esquire Deposition Services, L.L.C.*, 236 F. Supp. 2d 912 (N.D. Ill. 2002). The Court subsequently granted the

1

215

defendants' motion for summary judgment on Engate's claim that the defendants' employee court reporters infringed on Engate's patents, holding Engate had failed to offer any evidence that the employees "have actually performed the feature functionalities disclosed in Engate's patents." *Engate,* 2003 WL 22117805, at *8.

Although the Court granted the defendants' motions for summary judgment on Engate's claims of direct infringement, we left open the possibility that the defendants "might be liable for 'active inducement of infringement or contributory infringement of a method claim under 35 U.S.C. § 271(b) and (c).'" *Engate,* 2003 WL 22117805, at *3 (quoting *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1267 (Fed. Cir. 2003)). At the time, the Court was "not certain whether Engate ha[d] asserted a claim under § 271(b) or (c)" and did not decide the issue because it was not then before the Court. *Id.* Engate now claims the defendants are liable for inducing infringement by court reporters and attorneys. The defendants argued initially that Engate had waived any claim that they had engaged in indirect infringement, but we rejected that argument. *See* Minute Order (dated July 22, 2003). The defendants seek summary judgment on Engate's claims of inducement.

Summary judgment is proper "'where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990) (quoting Fed. R. Civ. P. 56(c)). In assessing a summary judgment motion, the Court's "function is not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Bennett v. Roberts,* 295 F.3d 687, 694 (7th Cir. 2002) (citation omitted). The Court

evaluates admissible evidence in the record in the light most favorable to the nonmoving party. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998). But "[t]he nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citation omitted).

Local Rule 56.1(a)(3) requires the party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law . . . ." Atkinson-Baker did not file a Rule 56.1(a)(3) statement of undisputed facts, and its explanation – that it did not have to come forth with evidence because Engate has the burden of proving indirect infringement – does not excuse its omission. Engate urges the Court to deny Atkinson-Baker's motion on that ground. But "the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (citation omitted). Although Atkinson-Baker brazenly violated the Local Rule, the Court will not deny its motion on that basis. Even if we did so, we would still have to consider Esquire's parallel motion for summary judgment. Because Esquire is entitled to summary judgment and Atkinson-Baker raises substantially the same arguments as Esquire, it would be a waste of judicial resources to deny Atkinson-Baker's motion on procedural grounds and let the case proceed to a trial with an essentially predetermined outcome.

But before we consider the parties' arguments on the merits, we must clarify two statements in our prior opinions that the parties have taken out of context in their briefs. Engate argues that the Court has already found direct infringement by court reporters and attorneys. Not

so. In considering whether the defendants could be held vicariously liable for the actions of independent contractors, we noted that "[t]he parties agree that any actual acts of infringement are done, not by the defendants themselves, but by the court reporters who work for the defendants and by the attorneys who use the court reporters' services." *Engate, Inc.*, 236 F. Supp. 2d at 913. This was not a finding of infringement. Rather, it reflected a concession made by the defendants for argument's sake: if (as the defendants argued) Esquire and Atkinson-Baker were not vicariously liable for the actions of independent contractors, the contractors' use of patented functionalities would be immaterial. Our comment did not relieve Engate of the need to prove that actual infringement occurred. This is clear from our later statement that although "[t]he evidence indicates that at least some of Esquire's employees have performed real time court reporting services," "there is no evidence to suggest that they have *actually* performed the feature functionalities disclosed in Engate's patents." *Engate*, 2003 WL 22117805, at * 8 (emphasis added).

Engate is not alone in misreading our prior rulings. The defendants erroneously conclude that one of our past decisions precludes a finding that the defendants induced infringement. The defendants argue that they "cannot be liable for the claims that only require action taken by court reporters, because the Court has previously held that 'there [is no] evidence to show that the defendants directed or required the court reporters to use the patented inventions; on the contrary, the evidence shows that the court reporters selected and bought their own equipment.'" Esquire Reply at 18 (quoting *Engate*, 236 F. Supp. 2d at 914). The defendants have taken our comments out of context. When we concluded that "the defendants are not liable for the use of any patented invention by the court reporters who work for them as independent contractors," our holding

4

pertained only to the question of whether the defendants could be held vicariously liable for direct infringement. *Id.* at 915. Today we are asked to consider whether the defendants induced court reporters and attorneys to directly infringe Engate's patents – and our prior ruling does not preclude us from holding the defendants liable under § 271(b).

We now turn to whether a genuine issue of fact exists on the question of whether the defendants induced infringement. Under § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To establish liability, Engate must prove that once the defendants knew of Engate's patents, they "actively and *knowingly* aid[ed] and abett[ed] another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (emphasis in original). "'[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement.'" *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990)). A violation of § 271(b) can be boiled down to three essential elements: (1) direct infringement by a third party; (2) intent by the defendant to induce infringement by the third party; and (3) knowledge by the defendant that its actions would induce actual infringement by the third party. *See Met-Coil Systems Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("Absent direct infringement of the patent claims, there can be neither contributory infringement nor inducement of infringement."). Engate concedes that Esquire and Atkinson-Baker did not learn of Engate's patents until Engate filed this lawsuit on October 15, 2001, which means the defendants could not have known until that date of any inducement to infringe upon a patent. Therefore, Engate can survive summary judgment only if a reasonable jury could find that after October 15, 2001, court reporters and/or

5

attorneys infringed upon patents after the defendants intentionally induced them to do so.

The defendants argue that they are entitled to summary judgment because Engate's evidence suffers from the same deficiency that we have found before: it shows only that court reporters and attorneys *could* infringe the patents, not that they *actually* did. *See Engate*, 2003 WL 22117805, at *8. The defendants also argue that Engate cannot establish that the defendants had the requisite intent to induce infringement. If we find that Engate has failed to provide evidence from which a reasonable jury could find intent to induce, we need not consider whether direct infringement has occurred because intent to induce infringement is an essential element to its claim.

Engate argues that Atkinson-Baker and Esquire's intent that court reporters and attorneys use patented functions can be inferred from the facts that:

- both defendants advertise and schedule real time reporting of depositions at which LiveNote is used;
- both defendants make money from real time reporting of depositions by independent contractors;
- both defendants resell LiveNote software;
- "Esquire provides a laptop loaded with LiveNote for third parties to use at real time depositions";
- "Esquire lends equipment to its independent contractors to perform real time depositions";
- Esquire previously maintained web sites that offered "Interactive Realtime reporting (instantaneous transcription via on-site computer hookup with LiveNote™ or Summation®–software training available)";
- "Esquire has trained attorneys in the use of LiveNote software"; and
- "Atkinson-Baker maintained a list of 'LiveNote clients' who did not pay for a real time hook up."

Engate Resp. at 3-5; Engate Ex. V. But a jury could not reasonably infer from this evidence that either Esquire or Atkinson-Baker intended patented functions to be performed at depositions they scheduled. As we have previously noted, "[t]he patents in suit do not cover real time court

reporting generally," and "Engate has no right to prevent the use of real time reporting in and of itself." *Engate*, 2003 WL 22117805, at *2. Thus to survive summary judgment, Engate must show more than that Atkinson-Baker and Esquire intended for real time reporting of depositions to occur.

Engate argues that two press releases issued by Esquire discussing the progress of this lawsuit provide evidence of intent for infringement to occur. One passage states:

> We believe the court's rulings create a significant barrier for Engate. In addition to the difficulty of meeting its burden of proving that the patent claims (the methods and features) were *actually* infringed, its strategy of targeting its enforcement on the court reporting agencies has failed to achieve its desired goal. We have always believed that it is impractical and not very cost effective for Engate to sue thousands of court reporters across the country. Of course, we hope that will never happen and given the vast sums of money expended so far in this litigation, we empathize with those reporters that have settled to date.

Engate Ex. W at 5 (emphasis in original). The second passage states:

> In preparation for its defense, Esquire uncovered what it believes to be a solid defense for invalidity based upon "prior art." Kenneth Thorn, CEO of the managing member of Esquire, revealed that Esquire's research demonstrates that many of the real time functions for which Engate obtained patent rights were in use in the late 1980s – well before the first patent was obtained. Esquire's motion cites various printed publications describing real time features in use that were not submitted to the patent office when it granted the patents.

Engate Ex. X. Engate argues that these two passages reflect Esquire's attempt to encourage court reporters "to continue to perform the accused real time reporting services, notwithstanding Engate's patent infringement claims." Engate Resp. at 4. But both press releases emphasize that the litigation is ongoing and that liability is still possible despite Esquire's optimism about the outcome. We fail to see how these general updates on the status of the lawsuit, which recognize that liability has not been entirely foreclosed, can be said to encourage court reporters to perform

7

the particular functionalities that supposedly infringe Engate's patents.

Engate also refers to a document, created by one of Esquire's regional offices, that we discussed in a previous ruling as listing services including the following:

> Interactive Realtime–Connect a laptop computer to the reporter's computer by using interactive software such as LiveNote™, Summation™, or e-transcript binder™ to search, annotate and review the testimony as it is occurring. Internet Realtime–Deposition transcripts can be securely viewed by any member of parties in realtime via the internet using LiveNote™ or Summation™ internet software.
> . . .
> Synchronization of Video to Transcript–Instantly search and retrieve videotaped testimony using your computer.

*Engate,* 2003 WL 22117805, at * 11. Engate refers to this document by stating that "Esquire's regional offices have disseminated a document identifying as one of its services 'Interactive Realtime' in which LiveNote software is used." Engate Resp. at 3. When Engate previously provided the Court with this document to review, the Court noted:

> the document shows, at most, that Esquire offers to sell *something*; it is not evidence that Esquire offers to sell what is disclosed in the asserted claims. Such a demonstration would require more analysis comparing the services generally described in the document with the methods and systems described in those claims. Engate has not argued, for example, that "Interactive Realtime," "Internet Realtime" and "Synchronization of Video to Transcript" . . . can be achieved only by means of the methods and systems claimed in the patents.

*Engate,* 2003 WL 22117805, at *11 (emphasis in original). Engate has said nothing in this round of the litigation that causes the Court to reconsider these comments. In short, the defendant's references in the document to real time reporting and to the use of particular software products do not permit a reasonable inference that the identified services *necessarily* involve the infringement of Engate's patents.

It is uncontested that LiveNote and the other real time reporting software used at

8

depositions scheduled by the defendants have substantial non-infringing uses. Engate provides no evidence that the primary incentive for customers to use the real time reporting services offered by the defendants is that the software they use has the capability of performing the supposedly patented functions. And we cannot simply assume that Atkinson-Baker and Esquire substantially benefit from or have an incentive to encourage the use of real time reporting software products for the purpose of performing supposedly patented functions. Engate has failed to present any direct evidence that the defendants intended the software to be used for anything other than non-infringing uses. Although circumstantial evidence is ordinarily sufficient to prove intent, *Warner-Lambert Co.*, 316 F.3d at 1363 (citation omitted), the Federal Circuit has suggested that when, as in this case, there are substantial uses of a product that do not infringe upon the plaintiff's patent, a court may not be able to infer intent to cause infringement without direct evidence. *Id.* at 1365.

In this case, however, neither circumstantial nor direct evidence of the requisite intent exists. Even after the Court draws reasonable inferences in favor of Engate, as we must when considering the defendants' motions for summary judgment, the evidence Engate offers suggests, at most, that Atkinson-Baker and Esquire advertised and scheduled real time reporting of depositions, knowing that court reporters and attorneys might take advantage of the functionalities of the identified real time reporting software products, some of which functions, Engate contends, infringe upon its patents. This is not enough to raise a genuine issue regarding intent, because "[e]specially where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." *Id.*

9

Engate urges us to apply a more lenient standard, arguing it should be able to meet the intent requirement by providing evidence that the defendants "'knew or should have known [their] actions would induce actual infringement.'" Engate Resp. at 2 (quoting *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)). However, the Federal Circuit's decision last year in *Warner-Lambert* explicitly stated that "'knowledge of the acts alleged to constitute infringement'" is not enough. *Warner-Lambert*, 316 F.3d at 1363 (citation omitted). Relying on the same case cited by Engate, the Federal Circuit concluded that "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Id.* at 1364 (citing *Manville Sales*, 917 F.2d at 554). In *Warner-Lambert* the plaintiff made the same argument offered by Engate. Warner-Lambert argued that the district court erred in granting summary judgment for the defendant because the defendant, Apotex, should be held liable for inducement because it knew or should have known that doctors would prescribe Apotex's generic drug for non-FDA approved uses that were patented by the plaintiff. The Federal Circuit rejected this argument, explaining that

> if a physician, without inducement by Apotex, prescribes a use of gabapentin in an infringing manner, Apotex's knowledge is legally irrelevant. In the absence of any evidence that Apotex has or will promote or encourage doctors to infringe the neurodegenerative method patent, there has been raised no genuine issue of material fact.

*Id.* Under this standard, evidence that Atkinson-Baker and Esquire may have known that court reporters and attorneys were utilizing software products that allegedly had the capability of infringing Engate's patents is insufficient to permit a jury to find intent to induce infringement.

This conclusion is consistent with the Federal Circuit's holding in a slightly different context that a defendant's failure to prevent direct infringement is not enough to hold him liable

10

for inducement. In *Tegal Corp. v. Tokyo Electron Co.* the Federal Circuit had to determine whether the district court properly held Tokyo Electron in contempt for violating an injunction prohibiting it from infringing upon a patent held by Tegal. Tegal argued that "by taking no action to prevent" a corporate affiliate from engaging in the behavior proscribed by the injunction, Tokyo Electron "was guilty of 'facilitating' infringement by its corporate affiliates." *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378 (Fed. Cir. 2001). In probing this theory of liability, the Federal Circuit analogized facilitation to inducement under § 271(b). The court stated that "[i]n the absence of a showing of control over another party, merely permitting the party to commit infringing acts does not constitute infringement, and it likewise cannot constitute 'facilitating infringing acts." *Id.* Thus the court concluded that "evidence of mere inaction did not constitute inducement." *Id.* at 1379 (citing *A. Stucki Co. v. Worthington Industries, Inc.*, 849 F.2d 593, 597 (Fed. Cir. 1988)).

Atkinson-Baker and Esquire may have understood that court reporters and attorneys attending real time depositions scheduled by the defendants had available to them the functionalities patented by Engate. Because the software products they were using had substantial non-infringing uses, neither knowledge of possible or even probable infringement nor failure to prevent the infringement constitutes intent to actively induce infringement. Thus Engate cannot prove inducement or even create a genuine issue of fact as to that element.

Because a reasonable jury could not find Atkinson-Baker or Esquire intended to induce infringement, the defendants are entitled to summary judgment, and the Court need not consider whether Engate has offered sufficient evidence of direct infringement. Therefore, we need not consider the defendants' motion to strike the declaration of Rhett Dennerline, offered by Engate

11

as evidence of direct infringement by court reporters and lawyers.

## Conclusion

For the reasons stated above, the Court grants Atkinson-Baker and Esquire's motions for summary judgment [docket # 153]. Defendants' joint Motion to Strike the Declaration of Rhett R. Dennerline is terminated as moot [docket # 211-1, 2]. The defendants' motions for partial summary judgment of invalidity are also terminated as moot [docket # 183]. The Clerk is directed to enter judgment in favor of the defendants.

MATTHEW F. KENNELLY
United States District Judge

Date: March 26, 2004